UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NORTHLAND INSURANCE COMPANY,

                            Plaintiff,

           -against-                            **REPORT &amp;**
                                                                **RECOMMENDATION**

IMPERIAL CAR SALES, INC., KRISTINA            08-CV-3299 (CBA) (RER)
LARREA, KARL H. FRANCIS, and
BRENDA ANDRADE-MORENO,

                            Defendants.
----------------------------------------------------------------X
**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff Northland Insurance Company seeks resolution of an underlying choice-of-law issue relevant to the recision *ab initio* of an insurance policy issued to defendant Imperial Car Sales, Inc. For the following reasons, I respectfully recommend that New Jersey law governs the insurance policy.

## BACKGROUND

Defendant Imperial Car Sales, Inc. ("Imperial"), is allegedly in the business of selling used automobiles. On November 28, 2006, defendant Kristina Larrea filled out an application on Imperial's behalf for a garage insurance policy[1] with the Leigh Agency[2] of Freehold, New Jersey. (Pl.'s Reply Mem. of Law Ex. C.) On the application, Larrea indicated that she was Imperial's

---

[1] This garage policy covered the automobiles that were allegedly being sold by Imperial in New Jersey. (Pl.'s Reply Mem. of Law Ex. C.) Larrea expressly represented in the application that the automobiles would not be used by employees for personal use. (*Id.*).

[2] The Leigh Agency is a retail broker of insurance. The Leigh Agency submitted Imperial's application to Tri-State General Insurance Agency, a wholesale broker, who then arranged for coverage by plaintiff Northland Insurance Co. ("Northland"). At the time of the accident, Imperial was insured by Northland.

owner and sole employee, and that Imperial was located in New Jersey. (*Id.*)  At some point, Northland issued the insurance policy to Imperial, effective from the date of application.

On December 11, 2007, defendant Brenda Andrade-Moreno was struck by a vehicle as she was crossing North Broadway in Hicksville, New York.  The vehicle that struck Andrade-Moreno fled the scene, but was identified by a witness and later found by police at 57 Princess Street in Hicksville (the home of the driver, defendant Karl H. Francis).  The vehicle was registered to Imperial and insured under the policy issued by Northland.  Andrade-Moreno later filed a civil suit in New York State Supreme Court against Imperial and Francis.  Imperial and Francis[3] then sought coverage from Northland under the policy.

While investigating the underlying accident, Northland claims to have identified several material misrepresentations made by Larrea on the insurance application.[4]  Consequently, Northland filed the instant action seeking, *inter alia*, a declaration that the insurance policy was void *ab initio*.[5]  Plaintiffs then filed this motion to obtain a ruling as to the law controlling the insurance policy.  The matter was subsequently referred to me by the Honorable Carol B. Amon for a Report and Recommendation.

---

[3] Apparently, Francis later identified himself as an Imperial employee. (Pl.'s Mem. of Law at 2.)

[4] For example, that the business address given on the application is essentially a front used by over 300 other purported auto dealers. (Pl.'s Mem. of Law at 3.)  According to plaintiff, Imperial had no cars for sale at this location at the time of the accident.

[5] The Clerk of the Court entered default as to Imperial, Larrea and Francis.

**DISCUSSION**

Is There A Conflict:

The first step in any case presenting a potential choice-of-law issue is for the court to determine whether there is an actual conflict between the laws of the jurisdictions involved. *See Allstate Ins., Co. v. Stolarz*, 81 N.Y.2d 219, 223 (N.Y. 1993). Under New Jersey law, an insurance policy may be cancelled retroactively where an insured has made a misrepresentation of material fact in obtaining the policy. *See Rutgers Cas. Ins., Co. v. La Croix*, 946 A.2d 1027, 1036-37 (N.J. 2008). On the contrary, New York law does not allow retroactive cancellation. *See* N.Y. VEH. & TRAF. LAW § 313 (2008); *Eagle v. Singleton*, 717 N.Y.S.2d 351, 352-53 (N.Y. App. Div. 2000). Thus, there is a conflict between the law of New York and the law of New Jersey.

Grouping Of Contacts:

Federal courts sitting in diversity jurisdiction normally apply the forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Tri-State Employment Servs., Inc. v. Mountbatten Sur. Co., Inc.*, 295 F.3d 256, 261 (2d Cir. 2002). Therefore, this case is subject to New York choice-of-law principles. New York courts apply the "center of gravity" or "grouping of contacts" choice-of-law test in cases such as this.[6] "The purpose of grouping

---

[6] Andrade-Moreno seems to argue that tort contacts should govern the choice-of-law inquiry. (Def.'s Mem. in Opp. at 10-11.) To support this assertion, Andrade-Moreno cites to *Reliance Ins. Co. v. Calderon*, 685 F. Supp. 72 (S.D.N.Y. 1988). Like the majority of cases Andrade-Moreno cites, *Reliance* was decided under a pre-*Stolarz* analytical framework. In *Stolarz*, the New York Court of Appeals applied the "grouping of contacts" theory in an automobile insurance coverage context. *See Stolarz*, 81 N.Y.2d at 226-229. This theory was again applied by the Court of Appeals in *Zurich*, and has been applied by New York courts in the automobile insurance coverage context ever since. *See, e.g.*, *Eagle*, 717 N.Y.S.2d at 352-53 (applying "grouping of contacts" in an automobile insurance *ab initio* cancellation case). Thus, *Reliance* is inapposite.

3

contacts is to establish which state has 'the most significant relationship to the transaction and the parties.'" *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317 (N.Y. 1994) (citing Restatement (Second) of Conflict of Laws § 188, ¶ 1). In general, contacts significant to contracts include, the place of contracting, the place of negotiation and performance, the location of the subject matter of the contract, and the domicile or place of business of the contracting parties. *See id.* (citing Restatement (Second) of Conflict of Laws § 188, ¶ 2); *Eagle*, 717 N.Y.S.2d at 353. As to insurance contracts specifically, "the applicable law is 'the local law of the state which the parties understood was to be the principal location of the insured risk . . . .'" *Zurich*, at 318 (citing Restatement (Second) of Conflict of Laws § 193, ¶ 6).

Here, the insurance policy was negotiated in New Jersey; issued to an insured that was allegedly doing business in New Jersey; and covered automobiles that would be garaged at (and test driven near) Imperial's lot in New Jersey. Consideration of the significant contacts strongly suggests that the parties understood New Jersey to be the principal—if not the only—location of the risk.[7]

To try and shift the "principal location of the insured risk" to New York, Andrade-Moreno claims that plaintiff knew at the time of the application that defendant Larrea resided in the State of New York.[8] In an attempt to make this purported knowledge relevant to the choice-

---

[7] Although Tri-State's and Northland's principal place of business may not be New Jersey, this has no bearing on the principal location of the insured risk understood by the parties.

[8] Although Andrade-Moreno makes this assertion, it seems to be based on a conversation that her attorney had with Sheldon Fallon (the Leigh Agency owner) on December 27, 2007. From this, Andrade-Moreno somehow infers that Northland knew this information on November 28, 2006, the date the application was filled out. (Def.'s Mem. in Opp. at 3, 12.) Although this inference is improper, I nevertheless address it.

4

of-law analysis, Andrade-Moreno cites *Allstate Insurance Co. v. Sullam*, 76 Misc.2d 87 (N.Y. Sup. Ct. 1973). In *Sullam*, the Massachusetts insurer was on notice that substantial risk under the policy would be located in New York because the *insured*: (1) represented that his permanent residence was in New York; (2) presented a New York driver's license to the insurer; and (3) opted for optional, out-of-state liability coverage. In this case, however, the *insured* is Imperial, not Larrea. The mere knowledge of *Larrea's* residence could not have put plaintiff on notice that the location of the risk was anywhere but New Jersey. The policy at issue here covered automobiles that would be garaged at (and test driven near) Imperial's purported lot in New Jersey. There was no indication that Larrea (Imperial's only employee) would use any of Imperial's cars for personal use. In fact, the application indicated to the contrary. (Pl.'s Reply Mem. of Law Ex. C.) Thus, *Sullam* is completely distinguishable.[9]

Andrade-Moreno also relies on *Allstate Insurance Co. v. Conigliaro*, 670 N.Y.S.2d 469 (N.Y. App. Div. 1998). In *Conigliaro*, the Court applied the *Stolarz* analysis and held that the contacts favored New York law over Florida law. *Conigliaro* is distinguishable, however, because the contract was negotiated over the telephone from the insureds' New York residence (their primary residence at the time) and the automobile was garaged in New York. *Id.* at 470. Here, there is no indication of any New York contacts in the negotiation or procurement of the insurance policy, or the garaging of the cars covered by the policy.

Andrade-Moreno also asserts that issues of fact exist as to (1) whether plaintiff

---

[9] Aside from being factually distinguishable, I note that the choice-of-law analytical framework utilized in *Sullam* is also pre-*Stolarz*. Furthermore, although *Sullam* held that New York law governed the insurance contract at issue, its holding was based on the fact that the Massachusetts law at issue was anachronistic (rendering its original policy justification moot) and discriminated against out-of-staters. Such is not the case here.

adequately investigated the representations made in the application; (2) whether plaintiff could have discovered the fraud earlier; and (3) whether the plaintiff unreasonably delayed in seeking rescission. (Def.'s Mem. in Opp. at 4.) Andrade-Moreno also contends that discovery is needed on these issues. In this regard, Andrade-Moreno again cites *Sullam* for support. However, these issues only became relevant in *Sullam* in the context of an equity based defense to the rescission, *i.e.*, *after* the choice-of-law issue had been resolved. *See Sullam*, 76 Misc.2d at 102-110. In other words, there is a time for these arguments—but that time is not now. Andrade-Moreno will have an opportunity to obtain discovery on these issues and make any equity based argument she wishes in opposing *rescission* of the policy.[10] Luckily for Andrade-Moreno, under New Jersey law, "courts wielding [the remedy of rescission] retain the discretion and judgment required to ensure that equity is done." *Rutgers*, 946 A.2d at 1035 (although the automobile insurance policy was void *ab initio*, the insurance company was nevertheless forced to pay benefits to an innocent party).

In short, I find all of defendant's arguments to be unpersuasive. New Jersey clearly has the most significant relationship to the insurance policy. *See Eagle*, 717 N.Y.S.2d at 353.

Strong Governmental Interests:

Although the "grouping of contacts" analysis is the "primary analytical tool" to be used in resolving choice-of-law issues relating to contracts, strong governmental interests should be considered where such interests are readily identifiable. *See*, *e.g.*, *Zurich*, 84 N.Y.2d at 318-19.

---

[10] Andrade-Moreno also claims that plaintiff's failure to introduce evidence of material misrepresentations should alter the choice-of-law determination. (Def.'s Mem. in Opp. at 5.) This argument is similarly misplaced. Whether material misrepresentations were in fact made by Larrea will also be resolved at the appropriate time.

Insurance fraud in New Jersey is a "rampant and expensive problem." *See Rutgers*, 946 A.2d at 1036, n.8. In order to combat this problem, New Jersey has adopted a strong public policy toward deterring insurance fraud by allowing retroactive cancellation. *Id.* This stance on insurance fraud serves to protect New Jersey's interest in low auto insurance premiums for its residents. Applying New York law would undermine this interest by placing the burden on New Jersey insurers to discover fraud before claims are made, thereby increasing insurance costs and premiums.

On the other hand, prohibiting rescission *ab initio* enforces New York's strong public policy of ensuring that innocent third parties are not denied compensation when injured by a negligent motorist. *American Continental v. Sinkler*, 903 F. Supp. 408, 414 (E.D.N.Y. 1995). Andrade-Moreno claims that applying New Jersey law to this case will bar her from recovering for her injuries. This is inaccurate. New York has explicitly provided some protection to innocent third parties like Andrade-Moreno. The New York Motor Vehicle Accident Indemnification Corporation ("MVAIC"), a state-created not-for-profit corporation pays no-fault claims to pedestrians involved in accidents with uninsured motor vehicles. *See* N.Y. INS. LAW. § 5201, *et seq*. (2008). Thus, while Andrade-Moreno *may* not be able to recover from Northland, she does have a potential avenue of recovery. Therefore, applying New Jersey law in this case would not undermine New York's interests in protecting innocent third parties. *See Eagle*, 717 N.Y.S.2d at 353-54; *see also Sinkler*, 413 F. Supp. at 413-16.

"In sum, on the facts presented, New York's governmental interests, when balanced against [New Jersey's] significant contacts with the contract and legitimate government interest in protecting its honest policy holders from bearing the burden of paying claims incurred by

dishonest policy holders, is not sufficiently compelling to warrant the application of New York law." *Eagle*, 717 N.Y.S.2d at 354 (citing *Sinkler*, 903 F. Supp. at 416).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that New York courts would apply New Jersey law to this dispute.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Carol B. Amon within ten business days of receipt hereof. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6, 72; *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

**Dated: February 9, 2009**
   **Brooklyn, New York**

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**